*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
April 25, 2024

v

ANDREW LEE STEPHENS,

        Defendant-Appellant.

No. 360550
Saginaw Circuit Court
LC No. 88-001708-FC

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant appeals as on leave granted[1] the opinion and order of the trial court denying his motion to grant the Parole Board jurisdiction to consider his early parole. We reverse and remand for reexamination of whether defendant should be declared eligible for early parole under MCL 769.12(4)(a) based on the legal framework outlined in *People v Grant*, 329 Mich App 626, 635; 944 NW2d 172 (2019).

## I. BACKGROUND

In 1989, a jury convicted defendant of breaking and entering an occupied dwelling with the intent to commit criminal sexual conduct (CSC), MCL 750.110; three counts of first-degree criminal sexual conduct (CSC-I); MCL 750.520b(1)(f) (personal injury inflicted and force or coercion used), and assault with the intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 10 to 15 years' imprisonment for the breaking and entering conviction, 40 to 60 years' imprisonment for each CSC-I conviction, and 6 to 10 years' imprisonment for the AWIGBH conviction. Defendant received 236 days' jail credit, which was reflected on the judgment of

---

[1] This Court initially denied defendant's application for leave to appeal. See *People v Stephens*, unpublished order of the Court of Appeals, entered June 8, 2022 (Docket No. 360550). But in lieu of granting leave to appeal, our Supreme Court entered an order remanding the case to this Court for consideration as on leave granted. See *People v Stephens*, 511 Mich 878 (2023).

sentence for only one of his CSC-I convictions. In 2018, the judgment of sentence was amended to reflect that the jail credit applied to each conviction and to reflect the second-offense habitual offender enhancement.

Defendant appealed his convictions as of right to this Court. See *People v Stephens*, unpublished per curiam opinion of the Court of Appeals, issued November 3, 1995 (Docket No. 120726). In his direct appeal, defendant raised three arguments: (1) defendant was denied a fair trial because he was not appointed counsel for two precustodial photographic lineups, and because the lineups were unduly suggestive, (2) the trial court erred by denying his request to adjourn the trial to permit genetic testing of a pubic-hair sample that was found in the victim's head hair, and (3) the prosecutor improperly vouched for the credibility of the witnesses and implied an incorrect burden of proof. *Id*. at 1-2. This Court rejected each argument and affirmed defendant's convictions and sentences. *Id*. Our Supreme Court denied leave to appeal. See *People v Stephens*, 453 Mich 894 (1996).

As a habitual offender, the trial court's approval was required for defendant to be considered eligible for parole before the expiration of his calendar minimum sentence (i.e., his minimum sentence set by the court without consideration of any good-time or disciplinary credits).[2] See MCL 769.12(4)(a). Defendant's calendar minimum sentence is August 17, 2028. The trial court's register of actions reflects that on February 9, 2021, the trial court received a letter from the Parole Board "requesting to remove" defendant so that he could be considered for early parole. The register of actions also reflects that the trial judge (a successor to the sentencing judge) denied the Parole Board's request on February 25, 2021. The register of actions does not indicate the court's reasoning for denying the request. The lower court record does not contain copies of either of these communications.

In September 2021, defendant moved, *in propria persona*, for an order to grant the Parole Board jurisdiction to consider defendant for early parole release pursuant to MCL 769.12(4)(a). Because defendant received "goodtime/disciplinary credits," his sentence was reduced by 2,637 days, leading to a net minimum sentence date of May 29, 2021. Defendant explained that because he was sentenced as a second-offense habitual offender, he was not eligible for parole until the expiration of the minimum sentence term fixed by the sentencing judge, or unless the sentencing judge or a successor gives written approval for parole at an earlier date as authorized by law. Defendant argued that he was unlikely to commit another crime considering his age (defendant is in his mid-60s). Defendant also underwent a Qualified Mental Health Professional Evaluation (QMHP) Sex Offender Risk Assessment on June 30, 2019, which resulted in a finding that he was in a " '[l]ow priority category for supervision and intervention in comparison with other sex

---

[2] Good-time and disciplinary credits are a positive offset on the calendar minimum sentence for prisoners who are permitted to accumulate those credits while in prison. See MCL 791.234(1); MCL 791.233b. In contrast, disciplinary time accumulates when a prisoner is found guilty of a major misconduct while in prison, and is considered in a negative light during a parole review or interview. See MCL 800.34(1) and (2). As discussed later, the parties do not dispute that, because defendant committed the crimes in the late 1980s, he was eligible to earn good-time and disciplinary credits, but he was not subject to disciplinary time.

offenders assessed.' " Additionally, defendant underwent a STABLE 2007 assessment in 2018, which resulted in the same general conclusions as the QMHP. Defendant argued that the Parole Board was in a better position to determine defendant's eligibility for parole.

Defendant noted that at the time he was sentenced, disciplinary credits were common. Thus, "[i]t should be presumed that when [the sentencing judge] entered [a] sentence of 40 years, that he was aware that Defendant would potentially only serve 32 years of that sentence." Additionally, defendant contended, at the time of defendant's sentencing, the Parole Board was not required to request jurisdiction to parole a prisoner early based on earned disciplinary credits. So, "[the sentencing judge] would have relied upon that in crafting his sentence." He argued that he did not have a "major misconduct" for over 20 years. He completed about 17 self-help and educational programs while in prison. Defendant noted that he had maintained employment during his imprisonment, and that he had plans to move in with his mother and find a job if he were released from prison. Defendant attached eight exhibits to his motion, including the amended judgment of sentence, the Parole Board notice of decision reflecting the court's denial of its request to release defendant, the QMHP report, the STABLE 2007 assessment, the parole-guidelines scoresheet, a letter to the court from defendant expressing remorse for the crime, and two letters of support from family members.

The court denied the motion in a written opinion and order. The court acknowledged that it denied the Parole Board's request to waive the jurisdictional requirement that defendant serve his calendar minimum sentence. The court rejected defendant's argument that the sentencing judge should be presumed to know that defendant would potentially serve only 32 years on his 40-year sentence because of his earned disciplinary credits. The court explained that the version of MCL 769.12 in effect at the time of defendant's sentence also provided that a defendant sentenced as a habitual offender was not eligible for parole before the expiration of the calendar minimum term without written approval from the judge. The judge noted that the present version of MCL 769.12(4)(a) continued this requirement, so the law has not fundamentally changed. The court declined to entertain a presumption that the sentencing judge would have believed defendant would serve less than 40 years in prison. The court stated:

> To the contrary, that learned judge, who had previously served as the elected Prosecutor for Saginaw County and an assistant prosecuting attorney before that, would have understood in sentencing Defendant as a habitual offender the law would require him to serve every day of that 40 year minimum absent special approval.

After reviewing the matter in its successor capacity and exercising its considered discretion, the court did not find a "persuasive reason to grant parole board jurisdiction before the minimum sentence crafted in this case has been served." Therefore, the court denied the motion. This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court abused its discretion by (1) improperly deferring to the sentencing judge instead of exercising its independent judgment, (2) failing to recognize the availability of early parole for habitual offenders who were sentenced when good-time and

-3-

disciplinary credits were available, and (3) failing to provide a reasoned basis for its denial of his motion. We disagree with defendant's first two arguments, but agree with his final argument.

We review a trial court's decision on a request to designate a habitual offender eligible for early parole for an abuse of discretion. *Grant*, 329 Mich App at 634. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id.* (cleaned up). A trial court also abuses its discretion when it commits a legal error. *Id.* Additionally, "[a] decision that is arbitrary and capricious would fall outside the range of reasonable and principled outcomes." *Id.*

The habitual-offender statutes allow for an enhancement of the defendant's sentence based on previous felony convictions. *People v Brown*, 492 Mich 684, 689; 822 NW2d 208 (2012). It is a longstanding principle of Michigan law that a habitual offender must obtain the approval of the sentencing judge to be considered eligible for parole before serving the calendar minimum sentence. See *Lamb v Bureau of Pardons & Paroles*, 106 Mich App 175, 185; 307 NW2d 754 (1981). The relevant statute is MCL 769.12, which more generally addresses fourth-offense habitual offenders. But subsection (4) of that statute relates to parole eligibility for *all* habitual offenders and currently provides as follows:

> An offender sentenced under this section or [MCL 769.10 or MCL 769.11] for an offense other than a major controlled substance offense[3] is not eligible for parole until expiration of the following:
>
> (a) For a prisoner other than a prisoner subject to disciplinary time, the minimum term fixed by the sentencing judge at the time of sentence unless the sentencing judge or a successor gives *written approval for parole* at an earlier date authorized by law.
>
> (b) For a prisoner subject to disciplinary time, the minimum term fixed by the sentencing judge. [MCL 769.12(4) (emphasis added).]

In *Hayes v Parole Bd*, 312 Mich App 774, 780; 886 NW2d 725 (2015), this Court held that MCL 769.12(4)(a) requires the trial court to provide "written approval before a prisoner otherwise selected for parole will become eligible for the actual grant of parole[,]" but the Parole Board does not have to wait for the trial court's "written approval before a prisoner can even be considered for conditional release." In other words, the Parole Board is required to consider the prisoner's candidacy for parole before the expiration of his or her net minimum sentence, regardless of whether the trial court has granted written approval. *Id.*

MCL 769.12(4)(a) was amended several times after defendant was sentenced in 1989, including most recently in 2012. See MCL 769.12, as amended by 2012 PA 319. However, the version of MCL 769.12 in effect at the time of defendant's sentencing in 1989 also required the written approval of the sentencing judge or a successor before the prisoner could be considered

---

[3] It is undisputed that this case does not involve a major controlled substance offense.

eligible for parole before the expiration of the calendar minimum date. See MCL 769.12(3), as amended by 1988 PA 90.

The parties do not dispute on appeal that because defendant committed the offense giving rise to his sentence before December 15, 1998, he was not a "prisoner subject to disciplinary time" under MCL 769.12(4)(b).[4] See *Grant*, 329 Mich App at 629; MCL 791.233c (defining the phrase "prisoner subject to disciplinary time" as that phrase is defined in MCL 800.34); MCL 800.34(5)(a) (defining a "prisoner subject to disciplinary time" as a prisoner subject to an indeterminate prison term for enumerated crimes "committed on or after December 15, 1998"). Defendant also earned good-time and disciplinary credits while in prison because he was sentenced before the enactment of Michigan's truth-in-sentencing statutes, MCL 791.233, MCL 791.233b, and MCL 800.34, "which preclude a prisoner from earning good time and disciplinary credits, and which require a defendant to serve the minimum sentence imposed by a court prior to being eligible for parole." See *Grant*, 329 Mich App at 630 n 2. As a result, defendant was eligible to have his parole date reduced by those credits and lowered below his actual minimum sentence. See *id*.; MCL 791.234(1) (explaining that a prisoner sentenced to an indeterminate sentence with a minimum in terms of years, with the exception of a prisoner subject to disciplinary time, is subject to the jurisdiction of the Parole Board when the prisoner has served the minimum sentence, less good-time and disciplinary credits); MCL 791.233b (recognizing that prisoners who are not subject to disciplinary time and who commit certain offenses outlined in the statute are generally ineligible for parole until they serve the minimum sentence less an allowance for disciplinary credits).[5] This Court held in *Grant* that this general principle was "a fact known to the sentencing judge at the time of defendant's sentencing." See *Grant*, 329 Mich App at 630 n 2.

This case is factually similar to *Grant*. The defendant in *Grant* was convicted of several felonies in 1993. *Id*. at 629. He was sentenced, as a fourth-offense habitual offender, MCL 769.12, to serve a prison term of over two decades in prison. *Id*. Once the defendant became otherwise parole eligible, the Parole Board wrote to the trial court, indicating that it had an interest in paroling the defendant. *Id*. at 631. The trial judge, who was the successor of the sentencing judge, denied the Parole Board's request. *Id*. The defendant moved for written approval of the Parole Board's jurisdiction to grant him parole. *Id*. at 632. The prosecutor opposed the motion, arguing that the defendant had not demonstrated remorse. *Id*. The court heard the motion but declined to exercise its discretion to grant early parole, explaining that the sentencing judge was very experienced, had a background in criminal law, was " probably 'more liberal' " in their sentencing decisions, and served as a mentor to the trial judge. *Id*. The court also noted the victim's concerns about the defendant's release and appeared to agree with " 'other points that were made in the prosecutor's brief.' " *Id*. at 633. Like in this case, this Court initially denied the defendant's delayed application for leave to appeal, but the Michigan Supreme Court remanded the case for consideration as on leave granted. *Id*.

---

[4] Prisoners subject to disciplinary time cannot receive good-time or disciplinary credits. See MCL 800.33(14).

[5] The same was true at the time defendant was sentenced. See MCL 791.234(1), as amended by 1982 PA 314; MCL 791.233b, as amended by 1982 PA 458.

This Court concluded on appeal that MCL 769.12(4)(a) granted the trial court discretion to decide whether to release a habitual offender for early parole and "effectively commands and guides a circuit court to render a decision and proffer an explanation for the decision such that the ruling falls within the range of reasonable and principled outcomes." *Id*. at 634-635. This Court then explained as follows:

> We are not prepared to dictate, nor does the statute require, contemplation of any specific standards, factors, or criteria in the circuit court's decision-making process with respect to whether to approve a request for early parole eligibility. But a circuit court cannot whimsically decide the issue, offering no supporting grounds or reasons. *A court must provide a basis or bases for its decision upon reflection of the circumstances surrounding the case and the offender, articulating any standards, factors, or criteria that the court has used in reaching its decision*. It is only then that this Court can properly assess whether a decision constituted an abuse of discretion. Whether factors, standards, or criteria employed by a court can survive appellate review will have to be determined on a case-by-case basis in this Court and our Supreme Court. Accumulated precedent, starting with this opinion, will shed more light on appropriate considerations by future courts tasked with responding to requests by habitual offenders for early parole eligibility. [*Id*. at 635 (emphasis added).]

This Court concluded that the trial court abdicated its responsibility under MCL 769.12(4)(a) by deferring to the sentencing judge's sentence and failing to consider any other factors when it denied approval of the request to designate the defendant eligible for early parole. *Id*. at 637-638. This Court found that the trial court failed to make its own decision on the issue and failed to consider "defendant's 25 years of imprisonment and his conduct during those years, whether characterized as good or bad." *Id*. at 638-639. This Court recognized that the trial court had made a "fleeting reference" to the victim's concerns about the defendant's release and the other reasons the prosecution raised in its brief, but noted that the trial court ultimately based its decision on the minimum sentence imposed by the sentencing court. *Id*. at 639.

Finally, this Court noted that at the time the defendant was sentenced, prisoners were able to earn good-time and disciplinary credits, and presumed that the sentencing judge factored this possibility into the original sentence. *Id*. at 639 n 6. The *Grant* Court explained, "It is appropriate for the trial court to give deference to the probable expectations of the sentencing judge." *Id*. But the judge who sentenced the defendant "would not have been shocked by the possibility of defendant's being paroled early" because of the possibility the defendant could earn credits. *Id*. Accordingly, this Court reversed the trial court's ruling and remanded the case "for reexamination of whether defendant should be declared eligible for early parole under MCL 769.12(4)(a)." *Id*. at 639.

In this case, defendant argues that the trial court improperly deferred to the sentencing judge's original sentence. We disagree. The trial court was able to defer to the probable expectations of the sentencing judge provided that it did not defer all of its discretion to the sentencing judge. See *id*. at 638-639. Although the trial court devoted a significant portion of its opinion and order to outlining the expertise and credentials of the sentencing judge, it did so in response to defendant's argument that the trial judge would have presumed that defendant would

potentially serve less than the 40-year minimum sentence. The court explained that in its independent discretion, it had not found a persuasive reason to grant the Parole Board early jurisdiction before defendant had served the minimum sentence. Accordingly, we find that the trial court's discussion about the sentencing judge's experience was not an abdication of the court's responsibility to exercise its independent discretion.

We also disagree with defendant's argument that the trial court committed an error of law by assuming that early parole for habitual offenders was "unduly exceptional rather than presumptively available." In his motion for Parole Board jurisdiction, defendant argued that the sentencing judge sentenced defendant at a time when disciplinary credits were common. He reasoned that "[i]t should be presumed that when [the sentencing judge] entered [a] sentence of 40 years, that he was aware that Defendant would potentially only serve 32 years of that sentence." Additionally, defendant argued that when he was sentenced, the Parole Board was not required to request jurisdiction to parole a prisoner early based on earned disciplinary credits.

The court explained that there was no reason to presume that the sentencing judge would have believed defendant would serve less than 40 years in prison. The court explained that under the version of MCL 769.12 in effect at the time of sentencing, the Parole Board was required to obtain the court's approval to consider an early parole for a habitual offender. See MCL 769.12(3). The court stated that the sentencing judge "would have understood in sentencing Defendant as a habitual offender the law would require him to serve every day of that 40 year minimum absent special approval." This statement was legally accurate. At all relevant times, the Parole Board required the trial court's written approval to deem a habitual offender eligible for early parole. See MCL 769.12(4)(a); MCL 769.12(3), as amended by 1988 PA 90; MCL 791.233; MCL 791.233, as amended by 1982 PA 458. The sentencing court was presumed to know that defendant could earn good-time or disciplinary credits and to have factored in that possibility in the sentence. See *Grant*, 329 Mich App at 639 n 6. But there was no reason to automatically assume, at the time of sentencing, that defendant would serve or was likely to serve less than the 40-year minimum sentence.

However, we find that the trial court abused its discretion by making a perfunctory statement that it was exercising its discretion without providing any basis for its decision. The court accurately recognized that it has independent discretion to consider the early-parole request, and the court exercised its discretion by denying the motion. But the court's only explanation for its decision was as follows: "Nor in reviewing this matter in its successor capacity, and exercising its considered discretion, has this Court found persuasive reason to grant parole board jurisdiction before the minimum sentence crafted in this case has been served"

*Grant* requires the trial court's analysis to be more thorough. The court must provide supporting grounds or reasons for its decision to facilitate this Court's review. *Id*. at 635. Otherwise, this Court cannot decide whether the court's reasoning falls within the range of reasonable and principled outcomes. See *id*. at 634-635. And while the trial court had broad discretion, the court was precluded from deciding this issue on a whim or on an arbitrary basis. See *id*. at 635. As outlined earlier, defendant supported his motion with several documents, including a QMHP report, a letter to the court expressing his remorse, and letters of support from his family members. The court did not reflect on any of this evidence regarding the circumstances surrounding the case or defendant's conduct while in prison (whether good or bad). See *id*. at 639.

It is not clear from the order whether the trial court considered valid criteria or simply denied the motion on a whim. The court's failure to articulate the basis of its decision precludes appellate review and warrants remand for a reexamination of the motion under the standard outlined in *Grant*.

We decline defendant's invitation to adopt a specific set of factors for the trial court in this case and for future courts to consider when deciding whether to deem a habitual offender eligible for early parole and grant a motion for Parole Board jurisdiction. This Court declined to set forth a specific test on this issue in *Grant*: "We are not prepared to dictate, nor does the statute require, contemplation of any specific standards, factors, or criteria in the circuit court's decision-making process with respect to whether to approve a request for early parole eligibility." *Id*. at 635. This Court explained that the issue "[w]hether factors, standards, or criteria employed by a court can survive appellate review will have to be determined on a case-by-case basis in this Court and our Supreme Court." *Id*. Thus, as this Court previously recognized, "[a]ccumulated precedent, starting with this opinion, will shed more light on appropriate considerations by future courts tasked with responding to requests by habitual offenders for early parole eligibility." *Id*. In this case, the trial court did not articulate any factors, standards or criteria that it employed to decide defendant's motion, leaving this Court without any supporting grounds to consider.

Defendant also requests that this Court direct the trial court to grant the Parole Board jurisdiction. Defendant essentially asks this Court to bypass the trial court and perform a direct review of his motion, applying his suggested criteria and examining his evidence de novo. The trial court has the discretionary authority to approve or deny a request to designate a habitual offender eligible for early parole. *Id*. at 634. This Court reviews the trial court's discretionary decision for an abuse of discretion, which occurs when that decision falls outside the range of reasonable and principled outcomes. *Id*. Defendant does not cite any authority that would authorize this Court to ignore the precedent set in *Grant*, to consider the issue de novo, or to circumvent the discretionary authority that the Legislature granted to the trial court in MCL 769.12(4)(a). We decline to consider the merits of defendant's motion.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Sima G. Patel

-8-